## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **SERVBANK, N.A**, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT – JURY TRIAL DEMANDED** |
| **RIFAT S. AHMED a/k/a RIFAT S. MOLY** | |
| Defendants. | |
| _____/ | |

Plaintiff, SERVBANK, N.A., formerly known as ALLIED FIRST BANK, SB ("Servbank"), by and through its counsel, Nelson Mullins Riley & Scarborough, LLP, sets forth the following allegations as and for its Complaint against Defendant Rifat S. Ahmed a/k/a Rifat S. Moly ("Defendant"):

### NATURE OF THE CLAIMS

1. Plaintiff Servbank brings this Complaint against its former employee, Rifat Ahmed a/k/a Rifat S. Moly ("Defendant"). While employed by Servbank as a Mortgage Loan Originator ("MLO"), Defendant knowingly and willingly engaged in numerous schemes to falsify information on applicants' mortgage application papers and doctor applicants' supporting financial documents. A Mortgage Loan Officer is responsible for working with an applicant to collect and submit documents and materials necessary for mortgage underwriters at an originating financial institution to assess the applicant's qualifications for a mortgage. Defendant, who was paid by Servbank on commission, submitted falsified information about applicants in order to increase the chances that they would be approved for a mortgage—and therefore boost her commissions. When the fraudulent nature of numerous mortgage applications processed by Defendant came to light,

Servbank was been required to "buy back" numerous mortgages from investor institutions at a significantly depreciated price, thereby incurring significant financial losses.

## PARTIES, JURISDICTION, and VENUE

2.     Servbank is incorporated in Illinois and has its principal place of business at 3138 East Elwood Street, Phoenix, AZ 85034.

3.     Prior to 2024, Servbank did business under the name "Allied First Bank, sb."

4.     At all times relevant to this civil action, Allied First Bank, sb maintained its principal place of business within the Northern District of Illinois at 3201 Orchard Road, Oswego, IL 60543.

5.     Upon information and belief, Defendant is a resident of Loudon County, Virginia.

6.     Federal jurisdiction exists under 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.     Jurisdiction and venue are proper because Defendant's employment agreement with Allied First Bank, sb was negotiated within the Northern District of Illinois.

8.     The losses, damages, and harms caused by Plaintiff's breach of fiduciary duty, breach of the duty of loyalty, common law fraud, and gross negligence as alleged herein were felt by the Plaintiff within the Northern District of Illinois.

9.     Additionally, jurisdiction and venue are proper in the Northern District of Illinois because Defendant's employment agreement, specified that all disputes arising from the agreement will be resolved on-site in Kendall County, Illinois.

## FACTUAL ALLEGATIONS

10.     On January 28, 2020, Servbank hired Defendant as a Mortgage Loan Originator ("MLO").

11.     An MLO is a customer-facing position that works closely with mortgage loan applicants during all phases of the application process.

12.     An MLO is generally the applicant's first point of contact during the pre-approval process, during the formal mortgage application process, and then during the closing phase of the homebuying process.

13.     An MLO does not make any independent assessments of the applicant's qualifications or risks.  Those decisions are made by the underwriters at the lending institution to which the MLO submits the mortgage loan application.

14.     During the mortgage application process, the MLO is responsible for working with the applicant to collect all the information necessary for the underwriters to decide whether to approve or deny the mortgage application.  That includes information about the applicant's employment and income, pay stubs, tax documents, bank statements showing proof of savings, documents showing proof of assets or investments, and all the other documents and information that is required on a case-by-case basis to assess the applicant's qualifications.

15.     In order to accurately assess the applicant's qualifications for the mortgage, the underwriters trust that the documents and information collected by the MLO are accurate.

16.     An individual must be licensed to work as an MLO.  The licensure process requires mandatory training courses, a background check, and approval by the Nationwide Multistate Licensing System and Registry ("NMLS"), a nationwide licensing body for professionals in the mortgage industry.

17.     As part of their mandatory training, all MLOs are expressly warned that they are not permitted to falsify, manipulate, doctor, or otherwise misrepresent the meaning of any information they submit as part of a mortgage loan application to a lending institution.

18.     Servbank is a nationwide mortgage broker, and employs MLOs based throughout the United States.

19.     After she was hired by Servbank, Defendant worked out of a home office at her residence in Sterling, Virginia.

20.     Defendant was free to solicit mortgage business in any part of the United States.

21.     During her employment with Servbank, Defendant originated multiple mortgage loans for applicants located in several states, including but not limited to Virginia, Maryland, Pennsylvania, New York, Connecticut, Michigan, California, and Washington.

22.     Defendant was compensated on a commission basis.  She received a 100 basis point commission on the value of each mortgage loan she originated, with the possibility of a quarterly bonus based on the number of individual mortgage loans she originated each quarter.

23.     In December 2022, a mortgage lending firm, Fairway Wholesale Lending ("Fairway"), contacted Servbank to report that an internal audit had uncovered a group of six loans containing false information within their respective application documents.

24.     On all six mortgage loans flagged by Fairway, Defendant had been the MLO and has been responsible for preparing the applications.

25.     Fairway informed Servbank that the six mortgage loans originated by Defendant had evidence of falsified employment information and/or falsified bank account information for the applicants.

26.     Additionally, some of the six mortgages loans flagged by Fairway had involved doctored alterations to the applicants' W-2 forms.

4

27.     The falsified information and altered information on the W-2 forms made it appear as if the mortgage applicants were wealthier and posed less of a risk of default than their actual qualifications reflected.

28.     After receiving Fairway's report about the six flagged loans in December 2022, Servank conducted its own quality control investigation of those six loans.

29.     Servbank's own independent investigation confirmed Fairway's reports of falsified information and doctored documents.

30.     Servbank further reviewed Defendant's communication history with the applicants of the six mortgage loans flagged by Fairway.

31.     Servbank confirmed that in some cases, there was no evidence Defendant had never even *asked* the customers for certain information that was later falsely included as part of that applicant's mortgage application, indicating that Defendant knowingly and consciously fabricated a portion of the false information present within the six mortgage loans flagged by Fairway.

32.     On another occasion, Defendant first submitted a customer's bank statement as part of a mortgage loan application to a different lending institution, Caliber Home Loans ("Caliber"). Caliber rejected the application and reported to Defendant that it identified false information on the applicant's bank statement when it checked with the bank to validate the statement.  Despite being warned about inaccurate information on the statement, Defendant submitted the same bank document to Fairway less than two weeks later as part of a new mortgage loan application on behalf of the same applicant.

33.     As part of its independent investigation, Servbank identified communications between Defendant and a customer which showed that Defendant was aware a customer had a pre-

existing mortgage on one of his properties, but indicated on his mortgage loan application to Fairway that the applicant *did not* have any outstanding mortgages.

34.     The six mortgage loans flagged by Fairway were approved by Fairway's underwriters based on falsified and/or doctored information in the application materials.

35.     Based on the results of its independent investigation into the six mortgage loans flagged by Fairway, Servbank terminated Defendant's employment on January 10, 2023.

36.     Pursuant to NMLS rules, Servbank was required to report Defendant's misconduct.

37.     Fairway was also required to report Defendant's misconduct under NMLS rules.

38.     As a result of reports from Servbank and Fairway, institutional investors who purchased the mortgage loans from lenders became aware of Defendant's misconduct and the potential for fraud in her other applications she submitted to lenders.

39.     In short, every mortgage loan Defendant touched while employed at Servbank became the subject of suspicion.

40.     After Defendant's termination, Servbank continued reviewing additional mortgage loan applications for which Defendant was the MLO, beyond the six mortgage loans first flagged by Fairway.

41.     Servbank's internal investigation identified patterns suggesting Defendant committed additional fraud during her time working as an MLO at Servbank.

42.     Additionally, Fairway also continued to investigate Defendant's other mortgage loan applications beyond the first six applications they previously flagged.

43.     In March 2025, Fairway's counsel informed Servbank that it investigated a total of 55 mortgage applications submitted by Defendant to Fairway during the two-year period of time she was employed at Servbank.

44.     To date, at least 43 of the 55 mortgage loan applications Fairway investigated contain evidence that Defendant falsified employment information, falsified income information, or falsified information about the applicant's monetary assets.

**Buy-Back Demands from Investors**

45.     After issuing a mortgage and lending the money to the borrower, the lending institution generally sells the mortgage to other financial institutions for pooling, aggregation, and securitization into a mortgage-backed security to be sold to an investor.

46.     When the accuracy of mortgage loan documents are called into question, the investor has the right to demand that the lending institution "repurchase" the mortgage.

47.     By the terms of an agreement between the parties, any repurchase demands received by Fairway can be passed on to Servbank in its capacity as the originating broker.

48.     Due to Defendant's misconduct, Servbank now faces liability to Fairway for the cost of repurchase.

49.     To date, Fairway has informed Serbvank that investors have exercised their right to force Fairway to repurchase 22 of the 43 mortgage loans for which Fairway found evidence of false or doctored information.

50.     The total loan value of the 22 mortgage loans for which investors have demanded repurchase exceeds $6.6 million.

51.     Additional repurchase demands may be made to Fairway in the future, for which Servbank could be held liable.    Therefore, the 22 mortgage loans mentioned in this Complaint represent examples of the Defendant's misconduct, and the Plaintiff's causes of action are no way limited to those 22 mortgage loans.  The causes of action in this Complaint are intended to cover each and every repurchase demand caused by the Defendant's unlawful use of false, misleading,

7

and/or inaccurate information on mortgage applications in order to boost the applicant's chances of being approved for the mortgage.

**FIRST CAUSE OF ACTION**
**(BREACH OF FIDUCIARY DUTY)**

52.     Servbank repeats, reiterates, and realleges all of the preceding allegations of the Complaint as if set forth at length herein.

53.     Defendant was employed by Servbank in a position of trust and confidence.

54.     As a licensed MLO, Servbank reasonably expected Defendant to perform her job in a forthright, honest, and ethical manner pursuant to standards set forth by the NMLS.

55.     As a licensed MLO, Defendant owed Servbank a fiduciary duty of loyalty and honesty.  Defendant was prohibited from acting in a manner that violated her fiduciary duty in any way.

56.     Defendant violated her fiduciary duty by knowingly including falsified information and/or doctored documents in multiple mortgage loan applications she submitted to underwriters on behalf of applicants.

57.     Defendant provided false, misleading, and/or inaccurate information to underwriters in order to increase her personal earnings, which were derived from commissions on successful mortgage loan applications.

58.     When Defendant's false information was discovered, the retail value of all mortgage loans for which she served as MLO decreased significantly, triggering a repurchase process that has resulted in losses and damage to Servbank.

59.     As a consequence of Defendant's breach of fiduciary duty, Servbank has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss

of good will and reputation, compensatory damages, interest, and punitive damages in an amount as the proof at trial may warrant but will exceed $1 million.

## SECOND CAUSE OF ACTION
## (BREACH OF THE DUTY OF LOYALTY)

60.     Servbank repeats, reiterates, and realleges all of the preceding allegations of the Complaint as if set forth at length herein.

61.     Defendant was employed by Servbank in a position of trust and confidence.

62.     As a licensed MLO, reasonably expected Defendant to perform her job in a forthright, honest, and ethical manner pursuant to standards set forth by the NMLS.

63.     As a licensed MLO, Defendant had a duty to provide truthful, accurate, and reliable information to the underwriters responsible for determining the viability of each mortgage loan application she submitted.

64.     Defendant was prohibited from supplying false, misleading, and/or inaccurate information for the purposes of influencing the underwriters' analysis of the mortgage loan applications she prepared on behalf of applicants.

65.     Defendant provided false, misleading, and/or inaccurate information to underwriters in order to increase her personal earnings, which were derived from commissions on successful mortgage loan applications.

66.     As a consequence of Defendant's breach of the duty of loyalty, Servbank has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory damages, interest, and punitive damages in an amount as the proof at trial may warrant but will exceed $1 million.

## THIRD CAUSE OF ACTION
## (COMMON LAW FRAUD)

67.     Servbank repeats, reiterates, and realleges all of the preceding allegations of the Complaint as if set forth at length herein.

68.     A key responsibility of Defendant's job as an MLO was to prepare accurate mortgage loan applications on behalf of applicants and present them to underwriters for review and analysis.

69.     Defendant was aware that the underwriters responsible for approving or denying the mortgage loan applications relied on the information and documentation she provided.

70.     Defendant was aware that information related to an applicant's employment, gross income, financial assets, and financial liabilities was of special interest to underwriters when deciding whether to approve or reject a mortgage loan application.

71.     On numerous occasions while employed by Servbank, Defendant falsified materially important information on applicants' mortgage loan applications.  Examples of such false information included incorrect information about the customer's employer, income level, financial assets, and financial liabilities.

72.     Defendant provided false information to underwriters despite knowing that such information was false and would prejudice the accuracy of their analysis and determination regarding the customer's qualifications for a mortgage.

73.     As a consequence of Defendant's willful falsification of facts for the purpose of deceiving underwriters, the retail value of the mortgage loans for which she served as MLO is now significantly less than the original value of the mortgage loan.

74.     Because Servbank was Defendant's employer, Servbank is ultimately liable for the decrease in retail value of the mortgages for which Defendant was the MLO.

75.    Servbank has therefore been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory damages, interest, and punitive damages in an amount as the proof at trial may warrant but will exceed $1 million.

## FOURTH CAUSE OF ACTION
## (GROSS NEGLIGENCE)

76.    Servbank repeats, reiterates, and realleges all of the preceding allegations of the Complaint as if set forth at length herein.

77.    In her capacity as an MLO, Defendant owed a duty of care to Servbank to perform the duties of her position with reasonable care.

78.    One of the elements of Defendant's duty of care was to avoid making mistakes in the mortgage loan application process that would create an unreasonable risk of harm to Servbank.

79.    Defendant failed to exercise due care in ensuring that the information about mortgage applicants she provided to the underwriters was accurate and reliable.

80.    For example, on several mortgage loan applications for which she was the MLO, Defendant submitted documentation to Fairway that had already been rejected by other lending institutions due to suspicion that it contained false information.

81.    Despite knowing that the rejected documentation was suspect, Defendant failed to exercise her duty of care to verify the documentation's accuracy before submitting it to Fairway as part of the same applicants' subsequent mortgage loan applications.

82.    Defendant failed to exercise reasonable care to ensure the information about the applicants she submitted to the underwriters was accurate and reliable.

83.    On multiple occasions, the suspicious documentation Defendant submitted to Fairway was later shown to be falsified, triggering Fairway's obligation to repurchase the mortgage

from the investor and further triggering Servbank's obligation to compensate Fairway for its losses from the repurchase.

84.     Defendant's actions resulted in harm to Servbank, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory damages, interest, and punitive damages in an amount as the proof at trial may warrant but will exceed $1 million.

**WHEREFORE,** Plaintiff demands the following:

a.      Judgment granting all of Plaintiff's claims in their entirety and awarding damages including but not limited to disgorgement of commissions, repayment of all wages, bonuses and other compensation paid to Defendant, repayment of all compensation paid to and benefits provided to Defendant, financial loss, loss of good will and reputation, constructive trust, compensatory and special damages, pre and post-judgment interest and punitive damages in an amount to be proven at trial;

b.      Judgment granting Plaintiff's costs and reasonable attorneys' fees incurred in this action; and

c.      Such other and further relief as the Court deems just and proper.

Dated: September 24, 2025

**Nelson Mullins Riley & Scarborough LLP**

*/s/ Nathan E. Hoffman* _____
Nathan E. Hoffman (6272415)
Nelson Mullins Riley & Scarborough, LLP
1222 Demonbreun Street, Suite 1700
Nashville, TN 37203
Phone: (615) 664-5300
Fax: (615) 664-5399
Email: nathan.hoffman@nelsonmullins.com
***Attorneys for Plaintiff Servbank, N.A.***

**Certificate of Service**

       I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on September 24, 2025.  I also certify that the foregoing document is being served this day via First-Class Mail on the following:


RIFAT S. AHMED a/k/a
RIFAT S. MOLY
339 SILVER RIDGE DR
STERLING, VA 20164-1352


                           *_/s/ Nathan E. Hoffman_*
                                   Attorney